ESTATE OF PRATT: REAGAN, Claimant, Respondent, vs. PEDRICK, Executor, Appellant.

*March 3—March 31, 1936.*

*Samuel M. Pedrick* of Ripon, executor, in *pro. per.*, for the appellant.

For the respondent there was a brief by *Reed & Reed* of Ripon, and oral argument by *Alfred S. Reed.*

NELSON, J.   The following facts are either stipulated, undisputed, or permissibly found : Charles L. Pratt, a resident of Ripon, died on August 25, 1935.   For about twenty-seven years prior to his death claimant was his housekeeper.   Dur-

ing that time he was unmarried and had no family or dependents residing with him. He had no occupation or employment except that of city surveyor. His income from that employment was not sufficient to maintain him and his home but apparently he had other income. From time to time, both decedent and claimant had moneys available for investment. Decedent for many years had invested his funds in North Dakota and Louisiana securities. During the time that claimant was decedent's housekeeper he made investments for her, attended to all the necessary correspondence, received remittances from time to time, and reinvested her funds for her. On or about March 1, 1920, claimant turned $2,000 over to decedent to be invested by him for her in Louisiana securities. Whatever services decedent rendered claimant in investing her funds were performed as an accommodation to her, for which he neither charged nor received compensation. With the funds intrusted to him by the claimant and certain additional funds of his own and of one of his relatives, he purchased three notes executed by Jas. C. and Roy McGuire, dated March 1, 1920, in the amounts and to mature as follows:

$200, due March 1, 1921;
$1,000, due March 1, 1926;
$2,000, due March 1, 1928.

The notes were payable to the makers and indorsed by them in blank. The notes were secured by a real-estate mortgage on Louisiana lands in which decedent was named as mortgagee. The notes and mortgage, after delivery to decedent, were kept by him in a safe located in his residence where other securities belonging to him and to the claimant were also kept. Claimant was not familiar with business transactions and left her business affairs largely to decedent. She apparently gave little attention to her securities and never insisted that they be segregated or turned over to her.

Each year in January, from 1912 to 1930, decedent entered on a slip of paper, which she retained in her possession, the total face value of her securities. The following entries, among others, appear on that slip:

| | | |
|---|---|---|
| Jan. 1, 1930 | | $10,650. |
| Jan. 1, 1931 | ($2000 ?) | 11,265. |
| Jan. 1, 1932 | ($2000 ?) | 12,025. |
| Jan. 1, 1933 | ($2000 ?) | 10,650. |

At some time not definitely appearing, but subsequent to March 1, 1920, decedent gave claimant a written memorandum which contained, among other items, the following:

"Date Mar. 1, 1920, due Mar. 1, 1926, rate 8, amt. $2,000, signature Jas. C. and Roy McGuire, owner Kate E. Reagan."

Aside from the slip and memorandum mentioned, neither decedent nor claimant apparently kept any books of account relating to their investments and securities. The mortgage was recorded March 24, 1920, and "reinscribed" February 1, 1930. In February, 1933, decedent filed, in the proper court of Jefferson Davis parish in the state of Louisiana, a petition for an executory process for a writ of seizure and sale of the lands described in the McGuire mortgage, in which he alleged that he was the owner of the three notes and that they were in default; no payment having been made thereon since November 18, 1924. In that proceeding, which will hereafter be referred to as the foreclosure proceeding, the lands were sold on April 22, 1933, at sheriff's sale, to decedent and Wallace H. Adams, an attorney at law, for $250. Pursuant to an agreement had with decedent, Mr. Adams received as compensation for his services an undivided one-half interest in the premises sold. Claimant did not know until shortly before decedent's death that the McGuire mortgage had been foreclosed. She contributed nothing to the expenses of foreclosure and had no knowledge of the arrangement made by decedent with Mr. Adams as to the latter's compensation. In

ancillary probate proceedings had in the state of Louisiana, the undivided half interest of the decedent in the lands foreclosed was appraised at $875. Other facts will be stated in discussing the contentions of the executor.

The executor's principal contention is that if there was a conversion of claimant's $2,000, such conversion occurred in March, 1920, when decedent invested her moneys in the McGuire mortgage which he took in his own name. If that contention is sound, the six-year statute of limitations no doubt bars recovery by claimant. Claimant concedes that if the conversion took place at that time her claim is barred. She, however, contends, as found by the trial court, that no conversion occurred at that time. In our opinion her contention is sound, and the finding of the trial court in that regard should not be disturbed. Claimant's funds were intrusted to decedent as her agent for investment in Louisiana securities. The McGuire loan exceeded the amount of claimant's ready funds, and consequently funds of decedent and those of one of his relatives had to be added in order that the mortgage of $3,200 might be acquired. It is a fair and reasonable inference that three separate notes were taken in the exact amounts contributed by claimant, decedent, and his relative, so as to evidence their respective interests in the mortgage, and that the $2,000 note belonged to claimant. The notes, payable to the makers and indorsed by them in blank, were bearer notes. *Roach v. Sanborn Land Co.* 135 Wis. 354, 115 N. W. 1102. Decedent's possession of the $2,000 note, even assuming that it was never delivered to claimant, was possessed by him as her agent and was, for all practical purposes, her possession. The mortgage was no doubt taken in his name for purposes subserving convenient handling. Under all the circumstances, we entertain no doubt as to the soundness of the trial court's conclusions that decedent did not convert claimant's funds or the note in 1920 by taking the mortgage in his own name. That conclusion

disposes of the several contentions of the executor that the claim on one theory or another is barred by the statute of limitations.

The court found that decedent, by foreclosing the mortgage and purchasing the property at the sale in his name and that of Mr. Adams, his attorney, converted claimant's property and is liable to her for such conversion. Whether, under the circumstances of this case which reveal that claimant implicitly relied upon decedent in the matter of her investments, conversion can be predicated upon a foreclosure of the mortgage without her knowledge, is, to say the least, doubtful. It is our opinion, that merely foreclosing the mortgage does not make a very strong case of conversion. Merely bringing the foreclosure action and alleging in his petition therein that decedent was the owner of the notes secured by the mortgage does not very satisfactorily support the conclusion that decedent was guilty of conversion. It was the duty of the decedent, under the circumstances, to exercise reasonable care to protect claimant's investment, and if foreclosure was advisable, to take that step. Failure to take that step under all of the circumstances revealed in the record might have rendered decedent liable as claimant's agent. If, however, the judgment of the county court is clearly right and if it can be upheld on other grounds, or for other reasons, then it should not be disturbed.

When decedent foreclosed the mortgage without consulting with the claimant or informing her of what he was doing, inferences which are permissible from the evidence, and when he entered into a most improvident arrangement with Mr. Adams, the attorney, which permitted the latter to acquire an undivided one-half interest in the lands covered by the mortgage in lieu of reasonable attorney's fees, we think that decedent as claimant's agent clearly violated a duty which he owed to her. Had the claimant been told of the foreclosure and of the contemplated arrangement with Mr.

Adams, in all probability she would have objected to such arrangements and would have willingly advanced the reasonable amount of attorney's fees and expenses necessitated by the foreclosure proceeding. She had ample funds from which to advance such fees and expenses and by so doing could have acquired, either in the name of decedent or in her name or in their joint names, the lands covered by the mortgage. We may take judicial knowledge of the fact that the depression which has existed since 1929 was at its height in 1933, and that values of real estate, especially farm lands, were at a low ebb then. To foreclose the mortgage and enter into the improvident arrangement without the knowledge or approval of claimant, whereby one half of the lands were unreasonably lost and dissipated, clearly constituted a violation of duty on decedent's part and resulted in liability. It is elementary that a principal has a cause of action sounding in tort against his agent when the latter violates a duty that he owes to the former. Such an action may be grounded upon the fact that the agent has improperly dealt with the affairs or the properties of his principal intrusted to him. While the decedent was not particularly skilled in matters of making investments, it is perfectly obvious that in doing what he did he violated a duty which he owed to claimant.

Upholding the judgment on the theory that the decedent breached a duty which he owed to the claimant, rather than on the theory of conversion (which obviously would amount to a breach of duty), is in our opinion the more sound. No new trial is necessary, since all of the proofs were adduced and since the court has found the facts which support our conclusion, which in turn support the judgment rendered.

The executor contends that the court erred in assessing damages. The trial court concluded, upon divergent and conflicting testimony given by witnesses residing in the state of Louisiana and in the vicinity of the lands in question, that the lands were reasonably worth $3,200 at the time of the foreclosure and sale. It also found that the expenses of the

sale, exclusive of attorney's fees, amounted to $148, and that $200 would be a reasonable attorney's fee for foreclosing the mortgage. The finding of the trial court as to what would have been a reasonable attorney's fee is, to say the least, liberal. The claimant, however, does not question that finding. While a reading of the depositions taken in the state of Louisiana relating to the value of the lands reveals widely divergent and conflicting opinions, we cannot say that the findings of the court as to value are against the great weight and clear preponderance of the evidence. Had the court found the value of the lands to be much less than $3,200, such a finding would have had to be sustained for like reasons. The testimony of the witnesses reveals that in 1933 there were no actual sales of lands in that vicinity which could be used as a guide in determining the market value of farm lands in that locality. The trial court was undoubtedly of the opinion that since there were no actual sales the value of the lands in question should be determined by the rule ordinarily employed to determine values, to wit: Market value is that price which property will bring when it is offered for sale by one who is willing but not obliged to sell and it is bought by one who is willing but not obliged to buy. *Kremer v. Rule*, 216 Wis. 331, 338, 257 N. W. 166.

Market values of real estate in times of depression are difficult of ascertainment as everyone knows. As before stated, we cannot say that the value of the lands at the time of the sale on foreclosure, as found by the trial court, are not supported by the evidence or are against the great weight and clear preponderance of the evidence.

After finding the value of the lands, the court deducted from that amount the expenses of the foreclosure and also the sum of $200 as a reasonable attorney's fee, and then computed the claimant's interest in the balance to be twenty thirty-seconds thereof. Whether the decedent was guilty of a conversion or a violation of a duty which he owed to the claimant, the damages are the same.

While the result reached may seem unjust to the beneficiaries under the decedent's will, and while a different result might have been reached had decedent been living and permitted to testify, we must determine the controversy upon the record as made, rather than upon an assumed record which might have been made had this controversy arisen and been litigated in the lifetime of decedent.

*By the Court.*—Judgment affirmed.