**In the Matter of Thomas J. LOKEN, Debtor.**

**EAU CLAIRE COUNTY, a quasi-municipal corporation, Plaintiff,**

**v.**

**Thomas J. LOKEN, Defendant.**

**Adv. No. 82–0127.**

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 4, 1983.

Carl T. Bahnson, Asst. Corp. Counsel, Eau Claire, Wis., for plaintiff.

Gregory J. Brown, Barnes & Brown, S.C., Eau Claire, Wis., for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

The debtor, Thomas J. Loken, was register of deeds for Eau Claire County from January 1, 1979, until he resigned on May 22, 1981. During that time he failed to remit to the county treasurer a substantial amount of the fees he collected. By June 4, 1981 Loken had repaid the approximately $30,000.00 he had misappropriated. On June 4, 1981, the county filed a criminal complaint against Loken for violating Wis. Stat. § 59.15(1)(b) which requires officials to remit fees collected at the end of each month.[1] On July 30, 1981 the debtor pled no contest and was fined for misconduct in public office, a Class E felony under Wis. Stat. § 946.12(2).[2] The fine has been paid.

Eau Claire County has incurred the following expenses in connection with Loken's misappropriation and subsequent prosecution:

1) $2,274.00 in interest lost from not having the $30,000.00 to invest,

2) $10,084.04 for the cost of auditing the register of deeds office after learning of the misappropriation, and

3) $1,262.00 for costs of prosecuting the debtor in the criminal action.

The county seeks a judgment for its unreimbursed expenses under a tort theory, claiming that the lost interest, auditing expenses and prosecutor's fees resulted from the debtor's misappropriation of the fees. No specific tort theory is identified, but it appears that "breach of fiduciary duty" or "malfeasance of duty" are the torts alleged. If a judgment for the county is granted for any or all of the damages, the county seeks an order that the award is nondischargeable in bankruptcy. The debtor argues that the court should not award damages for the audit or the prosecutor's fees as a matter of state law. He further argues that any award granted is dischargeable.

The county's complaint states that the interest, auditor fees and prosecutor's fees were lost by the county as a direct result of the debtor's "malfeasance or misfeasance of duty."[3] Neither the complaint nor the county's brief elaborate on the legal basis

1. Wis.Stat. § 59.15(1)(b) provides:
 (1) Elective Officials.
 (b) Any officer authorized or required to collect fees appertaining to his office shall keep a complete record of all fees received in the form prescribed by the board and shall file a record of the total annual receipts in the clerk's office within 20 days of the close of the calendar year or at such other times as the board requires. Any officer on a salary basis or part fees and part salary shall collect all fees authorized by law appertaining to his office and shall remit all fees not specifically reserved to him by enumeration in the compensation established by the board pursuant to par. (a) to the treasurer at the end of each month unless a shorter period for remittance is otherwise provided.

2. Wis.Stat. § 946.12(2) provides:
 Any public officer or public employee who does any of the following is guilty of a Class E felony:
 . . . .
 (2) In his capacity as such officer or employe, does an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity.

3. Complaint, paragraphs 7 and 10.

for recovery. The county acknowledges that public officials are immune from liability for damages arising out of their official conduct but notes that immunity is available only when the official's action is taken in good faith. *Margoles v. Wisconsin State Board of Medical Examiners,* 446 F.Supp. 959, 963 (W.D.Wis.1978).

The Wisconsin Supreme Court has stated that a cause of action in tort exists whenever an agent violates a duty owed to a principal. *Olfe v. Gordon,* 93 Wis.2d 173, 183, 286 N.W.2d 573 (1980), citing *Estate of Pratt,* 221 Wis. 114, 266 N.W. 230 (1936). In *Pratt* the court stated: "[i]t is elementary that a principal has a cause of action sounding in tort against his agent when the latter violates a duty he owes to the former." 221 Wis. at 120, 266 N.W. 230. Unquestionably Loken was an agent of Eau Claire County, as its register of deeds. The misappropriation was a violation of the duty owed in that position and served to both remove the immunity available to a public servant acting in good faith and give rise to a cause of action for damages. There remains only the question of the extent of damages for which he is liable.

The county has requested $2,274.00 for interest lost on the $30,000.00 misappropriated. The general rule regarding compensatory damages is that they "are given to make whole the damage or injury suffered by the injured party." *White v. Benkowski,* 37 Wis.2d 285, 290, 155 N.W.2d 74 (1967). A wrongdoer is liable for all of the natural and direct or proximate consequences of his wrongful act or omission. *Booth v. Frankenstein,* 209 Wis. 362, 245 N.W. 191 (1932). In *Shaw v. Gilbert,* 111 Wis. 165, 197, 86 N.W. 188 (1901) the court stated: "there can be no doubt that one defrauded of money or valuable property is entitled to recover not only such money or value, but also interest from the date of the deprivation, both of them as legal elements of his damage." Since Loken's misappropriation was the only reason the county could not invest and obtain interest on the fees paid, the loss of interest was the direct result of the tort involved.[4] The county is therefore entitled to interest on the $30,-000.00 at the rate and for the time it would have been able to obtain it but for the tort.

The county also requests $10,084.04 in expenses for auditing the records at the register of deeds' office after it learned that the debtor had misappropriated fees paid to that office. There is no contention that the auditor's fees are not reasonable in amount for the services provided. The parties do, however, disagree as to the purpose of the audit. The county states that the audit was undertaken to ascertain the amount missing and to give the next register of deeds a benchmark from which to begin. The debtor states that the county conducted the audit solely to prepare for trial. If the audit was not done solely in preparation for litigation, then the county is entitled to the auditor's fees to the extent that those fees "proximately flow from" the debtor's wrongdoing. *Booth v. Frankenstein,* 209 Wis. 362, 369, 245 N.W. 191 (1932). The facts to which the parties have stipulated provide scant evidence on which inferences as to the county's intention can be drawn.

The county's contention that the accounting was necessary regardless of the trial is certainly plausible. Although the accounting would have been useful at a trial, it also would appear to be reasonably necessary to give a starting point and credibility to all subsequent bookkeeping in the register of deeds' office. To fail to reestablish the accounting credibility destroyed by the misappropriation would be to permit damages which were unquestionably caused by the tort to continue. The county is entitled to terminate or correct that damage and recover the reasonable cost incurred in doing so.

Finally, the county has requested reimbursement for $1,262.00, paid as salary to

---

4. *See McPhillips v. McGrath,* 117 Ala. 549, 23 So. 721 (1898); *Baltimore & O.R. Co. v. Gaulter,* 165 Ill. 233, 46 N.E. 256 (1895); *Marion* *Trust & Banking Co. v. Roberson,* 151 Tenn. 108, 268 S.W. 118 (1925) granting interest on misappropriated funds.

a special prosecutor. The special prosecutor was employed in the criminal action, not in a civil tort action or in the proceeding now before us. Therefore, the statutory provisions for awarding attorney fees in civil actions [5] are not applicable.

■ Because the $30,000.00 was paid back before the criminal prosecution was commenced, it is apparent that the cost of prosecution arose not from the tort, but from the county's obligation to prosecute crimes committed within the jurisdiction. The fact that the tort and the crime arose from a single set of actions does not do away with the legal distinction between the debtor's liability for each. Although Wisconsin law authorizes a court to require restitution of a victim's pecuniary losses, Wis.Stats. §§ 973.09(1)(a) and (b), (8), and payment of specified costs, Wis.Stat. § 973.-06, the proper court for assessment of such costs is the court which hears the criminal action. The court which heard the debtor's case made no such award. Because there is no authority for doing so, this court will not permit the county to recover the cost of employing the special prosecutor.

We must now consider whether tort damages in this proceeding are dischargeable. 11 U.S.C. § 523(a)(4) provides:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Loken was convicted of "misconduct in public office," with no specific statement that the misconduct was "embezzlement." The Bankruptcy Court of the Eastern District of Wisconsin has defined embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *In Re Gumieny,* 8 B.R. 602 at 605 (Bkrtcy.E.D.Wis.1981), quoting *Neal v. Clark,* 95 U.S. 704, 709, 24 L.Ed. 586 (1877).

There is no crime entitled "embezzlement" under the Wisconsin criminal code. The index reference under "embezzlement" is to Wis.Stat. § 943.20 *Theft* which includes as a criminal act:

Wis.Stat. § 943.20(1)(b).

(1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):

. . . .

(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or em-

5. Wis.Stat. § 814.01 provides:

(1) Except as otherwise provided in this chapter, costs shall be allowed of course to the plaintiff upon a recovery.

(3) In an action for assault and battery, false imprisonment, libel, slander, malicious prosecution, invasion of privacy or seduction, a plaintiff who recovers less than $50 damages shall recover no more costs than damages. Wis.Stat. § 814.04 provides in part: when allowed costs shall be as follows:

(1) ATTORNEY FEES. (a) When the amount recovered or the value of the property involved is $1,000 or over, attorney fees

shall be $100; when it is less than $1,000 and is $500 or over, $50; when it is less than $500 and is $200 or over, $25; and when it is less than $200, $15.

(b) When no money judgment is demanded and no specific property is involved, or where it is not practical to ascertain the money value of the rights involved, attorney fees under par. (a) shall be fixed by the court, but shall not be less than $15 nor more than $100.

(c) No attorney fees may be taxed on behalf of any party unless the party appears by an attorney other than himself or herself.

ployment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use within the meaning of this paragraph.

The stipulated facts in this case support all of the elements of the crime of theft except the debtor's intention in its commission. Similarly the stipulated facts touch all of the elements of embezzlement identified in *Gumieny,* except "moral turpitude or intentional wrong." The fact that no criminal charges for theft were made against Loken may suggest that the prosecutors believed that the necessary criminal intent was missing.

 However, it is sufficient for a holding of nondischargeability to find in the absence of clear proof of "embezzlement" that the debtor's conduct was a "defalcation while operating in a fiduciary capacity." Defalcation is a broader term than embezzlement and is probably more broad than misappropriation. *Gumieny,* 8 B.R. at 605, citing *Collier on Bankruptcy,* 523–96 (15th ed.). In the present case Loken was a fiduciary under the Wisconsin statutory definition which specifically includes "public officer[s]." [6] Although there are no Wisconsin cases which have expressly found a register of deeds to be a fiduciary, the plain meaning of the statute seems to include any public officer. In addition, the statute requires a register of deeds to remit the fees he collects to the treasurer and, thus, seems to create a fiduciary relationship.[7]

 Although the debtor appears to be a fiduciary under Wisconsin law, the meaning of "fiduciary" is much narrower under the Bankruptcy Code. That narrowing is considered in *In Re Carione,* 12 B.R. 60 (Bkrtcy.D.R.I.1981) which states at page 62:

The general meaning—a relationship involving confidence, trust and good faith—is far too broad. The fiduciary

relationship referred to in § 523(a)(4) has been held to be limited to express and technical trusts. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The characteristics of an express trust include an explicit declaration of the creation of a trust, a clearly defined trust res, and an intent to create a trust relationship.... Similarly, ordinary commercial relationships such as creditor-debtor and principal-agent have been held not to create a fiduciary relationship in the bankruptcy context. (Footnote omitted.)

*See also In Re Donny,* 19 B.R. 354 (Bkrtcy. W.D.Wis.1982). The question then becomes whether the duties imposed by Wis.Stat. § 59.15 are sufficient to create the "express trust" required by *Davis v. Aetna.*

In *Carione* a bankruptcy court interpreting 11 U.S.C. § 523(a)(4) found that an express trust was created when a state lottery salesman was required to hold lottery receipts as a trust fund until he turned them in to the state. The Wisconsin statute requires the register of deeds to hold fees and remit them at the end of the month. The statute does not use the word "trust" but seems to create the same relationship as that in the lottery case. The public trust relied upon in making payments to a public officer creates an environment of reliance which is very similar to an express trust. The relationship is surely something more than the ordinary commercial obligation of a debtor obliged to pay a secured creditor proceeds from the sale of collateral. For a public officer the declaration of the trust arises in the statutory description of the office and its responsibilities. The trust res is clearly defined as consisting of the fees collected. The intention to create a trust seems clear from the statutory wording. Furthermore, oaths of office administered to and bonds required

---

6. Wis.Stat. § 112.01(1)(b), provides: " '[f]iduciary' includes a trustee under any trust, expressed, implied, resulting or constructive, ... public officer, or any other person acting in a

fiduciary capacity for any person, trust or estate."

7. For the text of Wis.Stat. § 59.15(1)(b), see note 1 *supra.*

from public officers focus further attention on the trust relationship involved.[8]

 Thus, even if the facts before the court may be insufficient to find that Loken embezzled the $30,000.00, there is a sufficient basis to find that the money was obtained by defalcation while serving in a fiduciary capacity.

 The debtor argues that the county's claims are nonetheless dischargeable because they come under the exception to 11 U.S.C. § 523(a)(7) for "compensation for actual pecuniary loss." Section 523(a)(7) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . .

This argument is specious. Although 11 U.S.C. § 523(a)(7) may provide an additional basis for nondischargeability which could be considered, it cannot be read as a limitation on other subsections of § 523(a). The fact that the damages awarded to the county are not a fine may preclude a holding of nondischargeability under § 523(a)(7), but in no way affects the decision that the award is not dischargeable by virtue of § 523(a)(4).

Upon the foregoing decision which constitutes my findings of fact and conclusions of law in this proceeding, it is hereby

ORDERED that judgment may be entered in favor of Eau Claire County and against Thomas J. Loken for damages consisting of lost interest and costs of audit in the principal amount of $12,358.04, and it is further

ORDERED that the debt upon which judgment has herein been ordered is not dischargeable in this bankruptcy case.

8. Wis.Stat. § 59.13(1)(g):

(1) Each county officer named in this chapter, except county supervisors, shall execute and file an official bond and take and file the official oath within 20 days after receiving official notice of election or appointment, or if not officially notified, within 20 days after the commencement of the term for which elected or appointed. Every county supervisor shall take and file the official oath within 20 days after receiving official notice of election or appointment, or if not officially notified, within 20 days after the commencement of the term for which elected or appointed. Every deputy appointed by any such officer shall take and file the official oath and if the deputy neglects shall forfeit $100. Such official bonds shall be in sums and with sureties, as follows:

. . . .

(g) Register of deeds, in counties containing less than 150,000 population, $3,000, with 2 or more sureties. In counties containing 150,000 or more population, not less than $3,000, with 2 or more sureties, conditioned for the accuracy of his work and the faithful, correct and impartial performance of his duties, and in addition thereto a bond of not less than $10,000, with 2 or more sureties, conditioned for the faithful accounting for and paying over to the county treasurer all moneys which may come into his hands as such officer, or into the hands of his deputy or assistants for him.