Wallace M. RUDOLPH, Lucy M. McDannel, and Eva Stoken, individually, and on behalf of those similarly situated, Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, Defendant.

No. 83 C 3303.

United States District Court, N.D. Illinois, E.D.

Feb. 22, 1984.

Marshall Patner, Orlikoff & Patner, Ronald L. Futterman, Hartunian, Futterman & Howard, Chtd., Siegan & Weisman, Chicago, Ill., for plaintiffs.

Peter R. Sonderby, Janet L. Reali, Chadwell & Kayser, Ltd., Chicago, Ill., William F. Koegel, James M. Ringer, Richard A. Cirillo, Timothy F. Michno, Rogers & Wells, New York City, for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiffs, investors in tax-exempt municipal bonds, brought this action against Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") alleging securities fraud under Section 17(a)(2) and (3) of the Securities Act of 1933, 15 U.S.C. § 77q(2) and (3); Section 12(2) of the same Act, 15 U.S.C. § 77*l*(2); and Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b). Jurisdiction in this Court is based on Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v.

Presently before this Court is defendant Merrill Lynch's motion to dismiss Counts I and II of the plaintiffs' Second Amended Complaint pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons stated below, Merrill Lynch's motion to dismiss Counts I and II is denied.

### I. Facts

The facts in this case, as alleged in the Second Amended Complaint, reveal a history of financial proceedings among individuals and corporations. In the mid-1970s, the Washington Public Power Supply System ("WPPSS") decided to construct five nuclear generating stations in the State of Washington. WPPSS issued tax-exempt bonds to finance construction of these stations. The bonds were offered in two issues: first, WPPSS series 1–3 covering generating stations 1–3; and second, WPPSS series 4 and 5 covering generating stations 4 and 5.

Merrill Lynch agreed to underwrite[1] a series of tax-exempt municipal bonds which it grouped together to comprise investment funds, collectively called Municipal Investment Trust Funds ("MITF"). Each MITF contained a fixed percentage of WPPSS series 4 and 5 bonds. Merrill Lynch sold each MITF at a price based on the value of the various bonds included in that MITF. The value of the WPPSS series 4 and 5 included within each MITF was at or near par.

Prior to all MITF sales, Merrill Lynch distributed prospectuses describing the MITFs to prospective investors. Paragraph 6 of the Second Amended Complaint alleges that these prospectuses declared that "investment quality was a must" with Merrill Lynch, that Merrill Lynch had studied the bonds' quality to reduce the investment risk associated with municipal bonds, and that the bonds Merrill Lynch selected for the

---

1. An underwriter within the meaning of Securities Act of 1933 buys securities directly or indirectly from an issuer and resells the securities to the public. *Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 535 (S.D.N.Y.1977).

MITFs had a "strong capacity to pay principal and periodic interest when due."

After examining the prospectuses, each plaintiff invested in MITFs during the period of 1977 through 1982. In the course of these sales, WPPSS suffered significant problems. Most important was WPPSS' decision to terminate construction on generating stations 4 and 5 because of extreme budgetary cost overruns coupled with projections of decreased energy consumption. Citing numerous articles and reports, the complaint alleges that Merrill Lynch knew of WPPSS' financial woes and its potential impact on the value of the WPPSS bonds contained in the MITFs. Moreover, the complaint alleges that Merrill Lynch never advised past or prospective investors of this potential financial instability of WPPSS series 4 and 5 bonds included within the MITFs. After construction was terminated, WPPSS defaulted on its obligation as to the bonds on stations 4 and 5. As a result, the value of WPPSS series 4 and 5 bonds has plummeted, and the corresponding market price of the MITFs that contain such bonds has mirrored that decline.

## II. *Discussion*

Merrill Lynch has moved to dismiss Counts I and II of plaintiffs' Second Amended Complaint for failure to plead fraud with particularity as required by Rule 9(b). Fed.R.Civ.P. 9(b). Plaintiffs do not contest the applicability of this rule. They contend, rather, that the complaint contains allegations of sufficient particularity to satisfy the requirements of Rule 9(b).

■ The specificity requirement of Rule 9(b) has been imposed by courts for several reasons. One purpose is to ensure that defendants have been apprised of the claimed fraud in a manner sufficient to permit the framing of adequate responsive pleadings. *Felton v. Walston,* 508 F.2d 577, 581 (2d Cir.1974); *Lewis v. Varnes,* 368

F.Supp. 45, 47 (S.D.N.Y.1974); *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977). Another purpose is to protect defendants from unjustified injury to their reputations. *Segal v. Gordon,* 467 F.2d 602, 607 (2nd Cir.1972); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D.Ill.1976). Protection is sought by requiring a greater degree of particularity in averments of fraud than is ordinarily required by the notice pleading established in Rule 8. Fed.R.Civ.P. 8. *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D.Ill.1976). However, Rule 9(b)'s more stringent requirement must still be read in conjunction with Rule 8, which requires a short and plain statement of the claim. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975).[2]

■ Specifically, Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Generally, a complaint is considered sufficient when it sets forth the time, place, particular contents of the false representations, the identity of the party making the misrepresentation, and the consequences of the misrepresentation. *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982); *Segal v. Gordon,* 467 F.2d 602, 606 (2d Cir.1972); *Baselski v. Paine, Webber, Jackson & Curtis,* 514 F.Supp. 535, 540 (N.D.Ill.1981).

In the present case, both Counts I and II allege facts sufficient to satisfy the five elements under Rule 9(b).[3] In fact, Merrill Lynch does not dispute that three of these elements are contained in the complaint. First, Merrill Lynch admits that the "place" of the alleged misrepresentation is the MITF prospectus. (Defendant's brief at 3). Second, Merrill Lynch concedes that plaintiffs identified Merrill Lynch as the party making the misrepresentation. (Defendant's brief at 3). Third, Merrill Lynch implicitly acknowledges that the alleged con-

---

2. A plaintiff, however, cannot rely upon conclusory language asserting fraud through mere quotation from the statutes. *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972); *Shemtob v. Shearson, Hammill and Co.,* 448 F.2d 442, 444 (2nd Cir.1971).

3. The Court's analysis applies to both counts since plaintiffs adopt and reallege all of the essential paragraphs of Count I of the Second Amended Complaint in Count II.

sequences of the misrepresentation are two-fold: a dramatically reduced market price for the MITFs that included WPPSS series 4 and 5; and a deprivation of future periodic bond interest income.

Merrill Lynch, however, disputes the presence of the two remaining elements necessary for a sufficient complaint under Rule 9(b). Generally, Merrill Lynch claims that the Second Amended Complaint fails to identify the particular content of the false representation. Specifically, Merrill Lynch contends plaintiffs failed to identify the precise language Merrill Lynch used or omitted in the MITF prospectus.

The Court finds Merrill Lynch's argument unpersuasive and contrary to the facts. The content of the false representation is included in paragraph 6 of the complaint. There, the complaint identifies Merrill Lynch's misrepresentation as Merrill Lynch's declaration that it had studied the quality of the bonds selected for the MITF and that the bonds selected had a strong capacity to pay principal and interest when due. Moreover, paragraph 12 alleges that Merrill Lynch's misrepresentations in paragraph 6 were fraudulent and misleading because Merrill Lynch not only knew that the WPPSS bonds were instable, and thus did not have a strong capacity to pay principal and interest, but also failed to disclose such information to past or prospective investors. Therefore, the allegedly fraudulent statements are sufficiently specified in the second amended complaint to satisfy the misrepresentation identification element.

Finally, Merrill Lynch disputes the existence of the last element required for a sufficient complaint under Rule 9(b)—"time." Merrill Lynch asserts that plaintiffs have failed to allege the precise time when Merrill Lynch learned its statements contained in the MITF prospectus became misleading.

Defendant's argument, however, rests on a fragile foundation. Contrary to Merrill Lynch's premise, the Court does not construe the "time" element to mean the

particular instant when the representation's inaccuracy became known to the writer, as defendant would have this Court do here. Rather, "time" is to be construed as the chronological moment when the false representation is made. Under this view, it is clear that plaintiffs have satisfied the "time" element in paragraph 6 of their complaint by alleging that defendant's misrepresentations were made on the particular distribution dates of the MITF prospectus to each plaintiff.

*Conclusion*

After a careful analysis of defendant's arguments, the Court rejects Merrill Lynch's contention that plaintiffs' Second Amended Complaint is fatally defective for lack of particularity in its allegation of fraud. Defendant's motion to dismiss Counts I and II is therefore denied.

IT IS SO ORDERED.