In re Waclaw R. JANIKOWSKI and
Deborah J. Kottel, Debtors.

Loretta PURCELL and Richard
Ryan, Plaintiffs,

v.

Waclaw R. JANIKOWSKI and Deborah
J. Kottel, Defendants.

Bankruptcy No. 83 B 17760.
Adv. No. 84 A 391.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 21, 1986.

Stephen B. Diamond, Margaret M. Fahrenbach, Beeler, Schad & Diamond, Chicago, Ill., for plaintiffs.

Howard L. Adelman, Adelman & Gettlemen, Ltd., Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS COMPLAINT

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter came before the court on the debtors' Motion to Dismiss the Complaint to Determine Dischargeability filed by Loretta Purcell and Richard Ryan. For the reasons stated below, the Motion to Dismiss the case is denied, but the Complaint is stricken and plaintiff given time and leave to cure the pleading deficiencies described hereinbelow.

Waclaw Richard Janikowski and Deborah Jean Kottel ("debtors") filed their joint petition as co-partners in the practice of law, under Chapter 7 of the Bankruptcy Code. Loretta Purcell and Richard Ryan filed this Adversary Complaint to bar dischargeability and for award of damages. The Complaint seeks to have the asserted debt declared non-dischargeable due to the debt-

ors' alleged improper handling of a real estate transaction while secretly representing the other party to that transaction. Debtors moved to dismiss the suit and Complaint for failure to state a claim upon which relief can be granted under Bankr. Rule 7012 and Rule 12 F.R.Civ.P. and for failure to plead fraud with specificity as required by Rule 9(b) F.R.Civ.P.

When ruling on a Motion to Dismiss, the Court accepts all well pleaded allegations of the Complaint as true and reads them in the light most favorable to the plaintiff. *Securities Fund v. American National Bank*, 542 F.Supp. 323 (N.D.Ill.1982). The motion should be granted only when it appears that a plaintiff can prove no set of facts which would warrant relief. *Zapp v. United Transportation Union*, 727 F.2d 617 (7th Cir.1984). Pleading standards under Rule 9(b) F.R.Civ.P. are separately discussed below.

## ALLEGATIONS OF THE COMPLAINT

The Complaint alleges the following facts and events, taking all well pleaded allegations as true and reading them in a light most favorable to plaintiff:

Kottel is an attorney licensed to practice in the state of Illinois. She began representing the plaintiffs Purcell and Ryan in various legal matters during January of 1981. Kottel's representation of plaintiffs continued through the formation and dissolution of the Kottel, Janikowski and Light law office partnership ("KJL") and then through its successor partnership, Kottel and Janikowski.

In December of 1981, Kottel told Purcell she had a buyer for property which plaintiffs co-owned located at 2333–37 and 2342 W. North Avenue in Chicago ("North Avenue Property"). The North Avenue Property was not listed for sale at the time. A few days later, Purcell was in the KJL office on an unrelated matter. Kottel said that she had a buyer for the North Avenue Property who could profitably manage multi-family apartment buildings and would be able to make timely payments should plaintiffs decide to sell that property.

Later, Kottel called Purcell and said that the prospective buyer offered to purchase the North Avenue Property for $110,000. Purcell and Ryan extended a counteroffer of $125,000 through Kottel. Kottel later told plaintiffs that the buyer had countered with an offer of $120,000. In purported reliance on Kottel's representation that the buyer could make timely payments, Purcell and Ryan agreed to sell the North Avenue Property for the latter price.

Kottel instructed plaintiffs to enter into a real estate listing contract with ReMax Properties which provided that the broker would receive a 7% commission on the sale. Believing that the buyer had contacted Kottel through ReMax Properties, the plaintiffs signed the listing agreement for the sale of the North Avenue Property.

On January 15, 1982, Purcell and Ryan executed a written contract to sell the Property to Donald G. Trosper ("Trosper") for $120,000, pursuant to an Installment Agreement for Deed. Kottel prepared that Installment Agreement and submitted it to Purcell and Ryan for signature. The document provided that plaintiffs would retain title to the North Avenue Property until Trosper paid the purchase price in full.

On January 23, 1982 when plaintiffs arrived at the KJL office to close the sale they were introduced to Trosper and his counsel. It is alleged "upon information and belief" that defendants' law partner represented purchaser at that closing. Kottel advised plaintiffs that rather than sell the Property on the Installment Agreement as they had planned, the plaintiffs should execute a Warranty Deed to Trosper in exchange for a $75,000 Wraparound Installment Note ("Wraparound Note") and a $35,660.13 Junior Note to be secured, respectively by a Wraparound Trust Deed and a Junior Trust Deed.

Kottel recommended that the Wraparound Deed of Trust be recorded only against the North Avenue Property and that the Junior Trust Deed be recorded against the "Melrose Arms Property", property which Trosper anticipated pur-

chasing by February 22, 1982. If Trosper did not acquire the Melrose Arms Property by that date, the Junior Deed of Trust would be recorded against the North Avenue Property or any other property agreed upon by the parties. Kottel said this would provide the plaintiffs greater protection because the debt would be secured by two separate properties and not by the North Avenue Property alone.

In reliance upon Kottel's representations and advice, Purcell and Ryan executed and delivered the Warranty Deed and accepted the notes which were to be secured by the two Trust Deeds and recorded as described above. They were not advised by Kottel to delay the closing on the North Avenue Property or to close in escrow until the Melrose Arms Property was purchased by Trosper. Kottel was entrusted at closing and afterwards with all documents received on behalf of plaintiffs.

Kottel failed to record the Wraparound Trust Deed and Junior Trust Deed prior to the execution and recording of the Warranty Deed. Kottel also failed to order a title commitment once the trust deeds were recorded to ensure that plaintiffs as mortgagees were fully secured in the chain of title on both pieces of property before the Warranty Deed was recorded. Additionally, Kottel failed to arrange for title insurance or to disclose to the plaintiffs that they should obtain such insurance to protect their interests in the Property.

Kottel did not record the Junior Trust Deed until June 3, 1982, and then she recorded it against both the North Avenue and Melrose Arms properties. By that time, other creditors had obtained priority over plaintiffs' Junior Trust Deed on both properties rendering the Junior Trust Deed worthless against either property.

Trosper recorded a Deed of Trust against the North Avenue Property on March 16, 1982. This further encumbered the Property which was intended to secure the plaintiffs under the Junior Trust Deed. Had the latter Deed been recorded on February 22, 1982 as provided in the sales transaction, it would have had priority over the March 16, 1982 Deed of Trust.

Between March 16, 1982 and March 31, 1982 a trust deed and four junior mortgages totalling $344,632 were recorded against the Melrose Arms Property, the other property intended to secure plaintiffs under the Junior Deed of Trust. When that Deed was finally recorded against the Melrose Arms Property on June 3, 1982, Trosper did not even appear in the chain of title.

Trosper failed to make any payments on either note, and he filed bankruptcy in May, 1983. During the period from March of 1982 through December of 1982 when Trosper was in default on the notes, plaintiffs and Ryan asked Kottel for legal advice to remedy Trosper's defaults. Based on Kottel's assurances that Trosper would fully pay each note when the final payments became due, Purcell and Ryan did not foreclose on the Property or pursue other remedies.

Throughout this entire period Kottel did not disclose to plaintiffs that she had represented Trosper on a continuing basis, and also in many real estate transactions prior to January, 1982.

Plaintiffs contend that debtors Kottel and Janikowski, individually and as a partnership, acted fraudulently and breached their fiduciary duty to Purcell and Ryan. These contentions are based on the debtors' alleged advice to the plaintiffs to sell by Warranty Deed rather than by installment sale; the debtors' failure to record the Junior Trust Deed until after Trosper had over-encumbered the North Avenue Property; and most significantly, the debtors' failure to disclose their prior and on-going legal representation of Trosper. Plaintiffs further assert that Kottel induced them not to foreclose after Trosper had defaulted. They contend that as a result of debtors' misrepresentations and omissions, they transferred title to their property and accepted a Junior Trust Deed from Trosper on both the Melrose Arms Property (in which Trosper did not have title) and the North Avenue Property (which became worthless when late recording followed in-

tervening encumbrances). The asserted wrongdoing by Kottel is alleged to be direct. That of Janikowski is only vaguely pleaded and appears to be based on a view that he is vicariously liable for Kottel's acts because he was her partner, and/or because he ratified and supported her acts in some as yet unspecified way.

The Complaint prays that Kottel and Janikowski be held personally liable for $110,-600.13 plus interest thereon allegedly lost by plaintiffs. It also seeks to have that debt held nondischargeable under 11 U.S.C. § 523(a)(4). Plaintiffs seek the latter relief because Kottel and Janikowski allegedly committed deceptions and fraud or defalcations during and in breach of their fiduciary relationship as attorneys for plaintiffs.

## Discussion

### 11 U.S.C. § 523(a)(4)

The Code provides in § 523(a)(4) that a debt "for fraud or defalcation while acting in a fiduciary capacity ..." will not be discharged. In considering this exception to discharge, the Court must determine whether a fiduciary relationship exists, and then whether fraud or defalcation has occurred in the course of that fiduciary capacity. Federal bankruptcy law rather than state law is determinative when considering whether the debtor is a "fiduciary" for dischargeability purposes. Nevertheless, state law is relevant to that inquiry. *In Re Johnson*, 691 F.2d 249, 251 (6th Cir.1982) *In Re Pedrazzini*, 644 F.2d 756, 758 (9th Cir.1981); *In Re Gagliano*, 44 B.R. 259 (Bankr.N.D.Ill.1984); *In Re Loken*, 32 B.R. 205 (Bankr.W.D.Wis.1983).

The courts have consistently held that to be a fiduciary for purposes of dischargeability, the debtor must be a trustee under either an express or "technical" trust and not under a trust imposed ex-maleficio. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934); *In Re Johnson*, 691 F.2d 249 (6th Cir.1982); *In Re Lichstrahl*, 27 B.R. 46 (Bankr.S.D.Fla.1983). The trust must exist, however, prior to the act of

wrongdoing out of which the debt arose. *In Re Pedrazzini*, 644 F.2d 756, 758 (9th Cir.1981).

A fiduciary relationship for dischargeability purposes may exist where a state statute has defined a particular relationship as fiduciary. *In Re Gagliano*, 44 B.R. 259 (Bankr.N.D.Ill.1984) The state statute creating the fiduciary relationship must, however, have imposed a trust on the property and set forth the fiduciary duties. *In Re Johnson*, 691 F.2d 249, 253 (6th Cir.1981). Further, the debt alleged to be nondischargeable must arise from a breach of the trust obligations imposed by law and not from any breach of contract. Therefore, the trustee's duties must be independent of the parties' contractual relationship. *In Re Schultz*, 46 B.R. 880, 884 (Bankr.Nev.1985).

Under Illinois law, an attorney occupies a fiduciary relationship to his client. *In Re Czachorski*, 41 Ill.2d 549, 244 N.E.2d 164 (1969); *Illinois Tool Works Inc. v. Kovac*, 43 Ill.App.3d 789, 2 Ill.Dec. 472, 357 N.E.2d 639 (1976). Further, this relationship is not dependent upon the attorney's acceptance of employment either orally or in writing. The fiduciary relationship existing between a lawyer and client extends to preliminary consultation even though actual employment may not result. *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). The lawyer's duty to his client is to act with the "utmost fairness and good faith." *In Re Kolb*, 362 Ill. 190, 193, 199 N.E. 92, 93 (1934). His profession demands "fidelity to his clients with an eye single to their best interest." *People ex rel. Chicago Bar Ass'n. v. Green*, 353 Ill. 638, 643, 187 N.E. 811, 813 (1933).

Although the courts in interpreting § 523(a)(4) have held the fiduciary relationship must arise from an express or "technical" trust, the outer limits of what may constitute the "trust" have never been clearly defined. Generally, an express trust is created by agreement between the parties to impose a trust relationship. *In*

*Re Levitan,* 46 B.R. 380, 384 (Bankr.E.D.N.Y.1985). The usual elements of an express trust traditionally have included an explicit declaration of trust, a clearly defined trust *res,* and an intent to create a trust relationship. *In Re Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977) (citing 89 C.J.S. Trusts § 22, at 734–35 (1955)). Recently, however, several courts have held that a technical express trust may also be created by a statute which expressly imposes fiduciary obligations on a party. *In Re Johnson,* 691 F.2d 249 (6th Cir.1982); *In Re Romero,* 535 F.2d 618 (10th Cir.1976); *In Re Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977).

The foregoing precedent supports and does not exclude a finding as to attorneys that a fiduciary relationship under Code § 523(a)(4) may be established by disciplinary rules adopted by a state's highest court rather than by statute.

Under the Code of Professional Responsibility, adopted by the Illinois Supreme Court in June, 1980, many obligations of counsel to their clients are specifically set forth. Under Rule 5–105(b), a lawyer may not continue multiple representation if the exercise of his independent judgment on behalf of a client may be adversely affected by his representation of another client. However, in situations covered by Rule 5–105(b), "a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Ill.Rev.Stat. ch. 110A, Canon 5, Rule 5–105(c) (1985). Here of course, the complaint indicates that such disclosure and consent never took place, though that is not expressly pleaded and must be inferred from the Complaint.

Further, it is contemplated under Canon 6, Rule 6–101(a)(3) that work and responsibility undertaken by an attorney is a trust that must not be neglected:

> "A lawyer should not ... neglect a legal matter entrusted to him."

■ This Court therefore concludes that the fiduciary relationship created between an attorney and client under Illinois law meets the requirements for a fiduciary relationship under Bankruptcy Code § 523(a)(4). Under Illinois law, attorneys must use utmost good faith and fairness in dealing with the property of his clients. Attorneys must also fully disclose the effect that multiple representation of clients may have on the exercise of independent professional judgment. And they are "entrusted" with legal matters which must not be neglected. It would shock the conscience of the ethical attorney and average client were we to conclude that those ethical mandates lose significance inside the doors of the Bankruptcy Court. The Complaint charges in substance that Kottel did not disclose her prior and ongoing representation of Trosper and that she did not deal with the plaintiffs' property (namely, certain documents entrusted to her for recording) as she committed herself to do, thereby harming plaintiffs. Those documents as alleged in this case are sufficient to comprise the trust *res,* sufficient at least for notice pleading purposes to meet the requirements of § 523(a)(4).

Once the fiduciary capacity is established under § 523(a)(4), it is necessary to determine whether fraud or defalcation has been committed in that capacity. "Fraud within the meaning of this section requires proof of positive, intentional misrepresentation or falsehood". *In Re Katzen,* 47 B.R. 738, 742 (Bankr.D.Mass.1985). As discussed below (at p. 12), fraud has not yet been sufficiently pleaded here, but apparently can be.

■ Defalcation under § 523(a)(4) is broader than embezzlement or misappropriation. "It can be a mere deficit resulting from the debtors misconduct, even though he derived no personal gain," and may be through negligence or ignorance rather than misconduct. *In Re Cowley,* 35 B.R. 526, 529 (Bankr.D.Kan.1983).

Although defalcation is usually thought of in terms of misappropriated funds, there is no reason why it should not be applied to the improper handling of any property.

Thus, an attorney acting in a fiduciary capacity with respect to his client's causes of action for a personal injury claim was held to have committed "defalcation" in that capacity by not revealing his disbarment to the client. The result of his inability to prosecute the claim was that the statute of limitations ran on the client's claim. His loss of the client's cause of action was no less a "defalcation" than a failure to account for entrusted moneys would have been. *In Re Gelman,* 47 B.R. 735 (Bankr.S.D.Fla.1985).

■ Similarly, the alleged mishandling here of entrusted documents to be recorded coupled with the attorney's failure to disclose to one client his conflicting obligations to another client who may benefit by that mishandling of documents, may constitute defalcation as well as fraud while acting in a fiduciary capacity. This case as pleaded thereby goes far beyond a mere allegation of attorney negligence or malpractice which could not, standing alone, bar discharge under § 523(a)(4).

### Rule 9(b) of the Federal Rules of Civil Procedure

■ Under F.R.Civ.P. 9(b), fraud must be pled with particularity. This rule, however, must be read in light of F.R.Civ.P. 8 which requires that allegations in a complaint be made in short, plain and concise statements. *Barr Co. v. Safeco Ins. Co. of America,* 583 F.Supp. 248, 258 (N.D.Ill. 1984). When alleging fraud in a complaint it is only necessary to set forth the basic outline of fraud and to indicate who made the misrepresentations and the time and place the misrepresentations were made. *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1311 (N.D.Ill.1984). But plaintiffs must give more than mere notice; they must state "with particularity" the circumstances constituting fraud. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). Such allegations are required both to ensure that defendants may adequately respond to the Complaint, and to protect them from unjustified injury to reputation. *Rudolph v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 100 F.R.D. 807, 809 (N.D.Ill. 1984). "Generally, a complaint is considered sufficient when it sets forth the time, place, particular contents of the false representations, the indentity of the party making the misrepresentation, and the consequences of the misrepresentation." *Id.* at 809 (citations omitted).

■ When pleading fraud, facts not "peculiarly within the adverse party's knowledge" may be pleaded upon "information and belief" if accompanied by a statement of the facts and circumstances upon which the belief is founded. *Duane v. Altenburg,* 297 F.2d 515, 518 (7th Cir., 1962).

■ The Complaint does not yet set forth sufficient detail as to when and by whom the statements which constituted misrepresentations or omissions were made or omitted. Plaintiffs have failed to show the factual basis for their "information and belief" that defendants' partner represented the other party at closing. They have also failed to plead sufficient details to support their other conclusory allegations:

—that defendants each acted as attorneys representing the other party for some time prior to, during, and after the transaction complained of; and

—that Defendant Janikowski himself performed improper acts, or omissions, or in some way is responsible for the acts and omissions of his partner Kottel.

All those inadequacies must be corrected by Amended Complaint.

Further, plaintiffs' must plead in detail the date when they first learned and fully realized the impact of the alleged double representation, and the circumstances by which they obtained that knowledge. They must also plead with particularity, if be true, that they never consented to the double representation during the critical period of document entrustment alleged.

The allegations in the Complaint therefore do not yet state a cause of action for which relief may be granted, but it present-

ly appears that plaintiffs may be able to cure those deficiencies.

IT IS THEREFORE ORDERED that the debtors' Motion to Dismiss is denied, but the Complaint is stricken and plaintiffs must file their amended Complaint within 21 days hereof, and defendants will answer or otherwise plead to the Amended Complaint within 21 days thereafter.

### 11 U.S.C. § 523(a)(6)

The Code provides that under § 523(a)(6) a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" will not be discharged. Some courts have found this phrase to require that the debtor act with the intent to cause injury. *E.g., In Re Finnie,* 10 B.R. 262 (Bankr.D.Mass.1981); *In Re Graham,* 7 B.R. 5 (Bankr.D.Nev. 1980). Other courts have held the phrase requires an intentional act which results in injury. *E.g., United Bank of Southgate v. Nelson,* 35 B.R. 766 (N.D.Ill.1983); *In Re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In Re Fussell,* 15 B.R. 1016 (W.D.Va.1981). The Ninth Circuit Court of Appeals in *In Re Cecchini,* 780 F.2d 1440 (9th Cir.1986), recently reviewed the split of authority and joined the Fifth, Tenth and Eleventh Circuits in adopting the looser standard of an "intentional act which results in injury." In that case which involved the debtor's conversion of funds, the court held that "when a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." 780 F.2d at 1443.

Plaintiffs charge that defendants intentionally set up the real estate transaction by representing to plaintiffs that their interests would be better protected through sale by Warranty Deed rather than by Installment Agreement for Deed, and then failed to timely record the entrusted documents.

Plaintiff's have not yet expressly pleaded or argued § 523(a)(6) as authority for their cause of action, but may be intending to do so. Should they desire to do so, such pleading should be by an additional Count plainly and expressly making such assertion in sufficient detail that it may be clearly confronted by defendants.

This case will be set for report of status on July 11, 1986, at 10:30 A.M. without further notice.