(No. 21116.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* MAURICE I. GREEN, Respondent.

*Opinion filed October 21, 1933—Rehearing denied Dec. 6, 1933.*

JOHN L. FOGLE, for relator.

WM. SCOTT STEWART, for respondent.

Mr. JUSTICE JONES delivered the opinion of the court:

An information was filed by the People, on the relation of the Chicago Bar Association, to disbar respondent, Maurice I. Green. The information consists of eight counts. The commissioner to whom the cause was referred reported the evidence and his conclusions. As a result of his conclusions relative to the first, second, third and eighth counts he recommended the disbarment of respondent.

The first count charges that on October 1, 1930, Sara A. Bregy employed respondent as her attorney to obtain a divorce for her; that by agreement she paid him $100 in full of all costs and his services in the matter; that he did not institute any suit for her and that he otherwise neglected his duty to her and retained the money. She paid him $35 on October 1, $35 on October 15 and $30 in December of that year. She was employed as a waitress at the hotel where Green and his family lived. She testi-

fied that when she employed respondent she and her husband had been separated about eighteen months; that the divorce was to be procured on the charge of cruelty; that respondent told her there were eight thousand cases ahead of hers and that ten days would be required to file the suit. She further testified that at the expiration of ten days she went to his room and asked him about it; that she became worried and went to see him almost daily; that about Thanksgiving time she asked him how long it would take to get the divorce and he told her "any day now." He did not file any bill of complaint or render any service in the matter. In December Mrs. Bregy learned that her husband contemplated suing her for a divorce. She informed respondent and told him the name of her husband's attorney. According to her testimony respondent said he would find out if there was a case pending against her and told her the next evening there was not; that he left the hotel in February, 1931, and she heard nothing more from him; that on February 11, 1931, she learned a decree had been entered against her that day; that she reported it to respondent and he proposed to open up the case, but she told him she had neither time nor patience for such a proceeding; that he asked her not to complain to the bar association and that he would refund the amount she had paid him. Her husband was granted a divorce from her on the ground of desertion. Service was had by publication. Respondent testified he was employed to obtain a divorce on the ground of desertion and not of cruelty; that a bill was not to be filed until the expiration of the two-year period prescribed by statute, which would be in April, 1931; that he received a letter from Mrs. Bregy notifying him that her husband had obtained a divorce; that when he ascertained the decree had been obtained on the grounds of cruelty and desertion he telephoned her that if the information she had given him concerning her marital relations was true the divorce had been obtained by fraud and perjury

and he would move the court to set it aside and would file a cross-bill for separate maintenance until April, when she could file a bill for divorce, but that she told him she did not want anything more to do with him. He admitted he never re-paid her anything. He collected his fees and the court costs almost six months in advance of the time when he could properly file a bill for divorce on the ground of desertion. Of the $100 he received, approximately $30 was a trust fund, to be used in defraying court costs, which he converted to his own use. He received $70 for which he rendered no service.

The second count charges respondent with taking advantage of and overcharging panic-stricken clients. It was shown that in November, 1929, Paul F. Badziong and two other men, Kropp and Garbe, were arrested at Badziong's home charged with a violation of the Federal prohibition law. Friends of the accused were induced to employ respondent to defend for a fee of $1000. The arrest was on Saturday. Respondent insisted the money be in his hands by four o'clock Sunday afternoon. He testified he made the demand because of an appointment with his family at that hour. Two witnesses testified he agreed to get Badziong out of his trouble or return the $1000. Garbe and Kropp were released without charges of any kind being preferred against them. Respondent testified he was not present at the hearing before the United States commissioner but that he talked to him after the men were arrested. Badziong was released on a bond of $600. When the matter came up in the Federal court respondent entered a plea of guilty in behalf of Badziong, and he was ordered to pay a fine of $25 and was sentenced to sixty days' imprisonment in jail on each of two counts, the jail sentences to run concurrently. At respondent's request an application for release on probation was continued for one week. Badziong testified that he got in touch with his employer, who secured another lawyer for him. A showing

was made to the court of the good character of Badziong and he was released on probation. There is no exact standard for fixing attorneys' fees. Many elements are to be taken into consideration, but if an attorney is not guilty of willfully over-reaching his client or imposing upon his confidence he should not be condemned. The proof to support the charge in the second count, while derogatory in character, is not sufficiently clear to justify extreme discipline.

The third count charges that in July, 1923, Cecil Thompson gave respondent $550 to invest for her; that he promised to invest in good securities and deliver them to her; that he claimed to have invested the money in bonds but failed and refused to turn them over to her; that upon her request for evidence of the investment he gave her his promissory note; that he never paid the note and that a judgment obtained thereon has not been satisfied. She was a waitress in a small restaurant where respondent sometimes ate. She testified he talked to her about making "easy money;" that she repeatedly tried to get payments from him, but he put her off from time to time; that two years after she gave him the money he started paying her and re-paid $135 or $150; that since 1925 he has not maintained an office; that about the time she filed complaint he told her the bar association was a joke, and he offered to buy her two dresses and make her a present; that he promised to call her the next Saturday and pay her some money, but she never heard from him. Respondent testified that the amount paid him by Miss Thompson was a loan made at her insistence and was $500 instead of $550; that he offered to return the money to her many times within the next year; that he had been keeping company with her sister but did not marry her, and that when he married another woman Miss Thompson tried to cause him trouble; that he did not have the money to re-pay her when she called for it and has not had it since. The commissioner saw the witnesses, their attitude and demeanor, and gave

credit to the testimony of Miss Thompson. We find nothing in the record from which we are disposed to disturb his finding that respondent obtained the money under a promise to invest it and fraudulently converted it to his own use.

The eighth count charges a conversion to his own use of the funds of a client. The testimony shows that S. Vajdik obtained a judgment by confession in the circuit court of Cook county against George Jorison and his wife on a promissory note. Jorison employed respondent to make a settlement for them. Respondent and O. F. Ring, counsel for Vajdik, agreed to a settlement in full for $400. The agreement was made on October 4, 1924, and the settlement was to be concluded on or before October 8. After the agreement was made, but on the same day, respondent secured from Jorison, who lived at DeKalb, Illinois, a cashier's check for $500. Instead of delivering the check to Ring respondent cashed it at the Sisson Hotel, in Chicago, and it was returned to and canceled by the DeKalb bank on October 7. Repeated efforts to get a settlement from respondent were unavailing. He told Ring he had not received the money. Ring communicated with Jorison, threatening execution. The canceled check was exhibited to Ring by a relative of Jorison. Ring informed respondent that he had seen the check, and respondent then promised to pay the money promptly. The money was not paid and Jorison filed a complaint with the grievance committee of the Chicago Bar Association. A settlement was made on the day before the hearing on the complaint. Respondent testified that on the day after he received the check he was called to Norfolk and Richmond, Virginia, returning October 11 or 12, and that on the first two days of December he was ill in a hospital.

The conduct complained of was unprofessional and dishonorable. It denotes lack of good moral character, calculated to bring discredit on the court and tarnish the good

name of the legal profession. A lawyer is an officer of the court—a minister in the temple of justice. His high calling demands of him fidelity to his clients with an eye single to their best interests, as well as good faith and honorable dealing with the courts and the public in general. The testimony shows that respondent does not possess that sense of duty and his offenses have been numerous and grave.

The rule will be made absolute and the name of respondent will be stricken from the roll of attorneys of this court.

*Rule made absolute.*