(No. 49981.‑ <span></span>

*In re* DAVID ALSWANG, Attorney, Respondent.

*Opinion filed April 3, 1978.*

Leonard M. Ring, of Chicago, for respondent.

Jack Toporek, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

*MR. JUSTICE DOOLEY delivered the opinion of the court:

This is a review of a recommendation of the Attorney Registration and Disciplinary Commission. The Review Board recommended that the respondent, David Alswang, a member of this bar for 50 years, should be censured for instituting a malicious prosecution action against a former client, Fannie Claybon. Respondent's action was filed after the Commission dismissed charges filed by Mrs. Claybon.

Does the filing of a malicious prosecution action by an attorney against the client who has unsuccessfully filed charges against him before the Disciplinary Commission constitute grounds for disciplining the attorney? This is the issue for decision here. The Illinois State Bar Association has been granted leave to file a brief as *amicus curiae*. It urges that the issue here is one of

---

\* This opinion was prepared by the late Mr. JUSTICE DOOLEY and was adopted and filed as the opinion of the court.

consequence to all Illinois lawyers, and that the Commission exceeded its authority.

Mrs. Claybon originally retained respondent in 1966 to handle a personal injury claim. In March 1971 she contacted respondent regarding her husband's withdrawal of her funds from a joint savings account and her advance of a large sum of money for his purchase of a car in his own name. She sought settlement of their financial difficulties but did not desire a divorce, although the marital relationship was strained.

Mrs. Claybon saw respondent on other occasions. On March 12, 1971, she paid him a retainer of $250, and on April 20, 1971, the following agreement was entered into:

> "I hereby employ DAVID ALSWANG attorney, to prosecute all claims for property against George W. Claybon settlement of property or monies due me from said George W. Claybon and in consideration for his services rendered and to be rendered, I agree to pay him a sum of money equal to 1/3 if settlement is made without suit and 1/3 in the event of suit, of any amount received or realized from said claim. This does not include fees from services in securing or defending divorce actions.
>
> /s/ FANNIE CLAYBON"

On April 18, 1971, a divorce action had been filed by Mr. Claybon. Respondent admittedly did everything necessary to protect Mrs. Claybon's interest in these proceedings. On February 2, 1973, Mrs. Claybon paid respondent a further sum of $2,000 as payment on account.

During the course of the protracted proceedings, Mrs. Claybon forged her husband's name to certain insurance checks issued to her husband and herself as payee in payment of fire and theft losses on their home. The respondent represented Mrs. Claybon on a hearing before the State's Attorney's office on a possible forgery indictment.

Eventually the divorce decree was entered. Mrs. Claybon was awarded a two-unit apartment building and its rent, certain furniture, $3,000 in lieu of alimony, and $1,500 for attorney's fees.

On July 31, 1973, respondent billed Mrs. Claybon for services. Although the total bill was $6,328.75, she was allowed a credit for the $250 retainer, the $2,000 payment on account, and the $1,500 attorney's fee awarded under the divorce decree. This left a balance owing respondent in the amount of $2,578.75.

Mrs. Claybon thought the original agreement gave respondent $1,000, being one-third of the $3,000 settlement in lieu of alimony. Since she had already paid him $2,250, she believed she was entitled to a refund. Respondent explained his bill represented his costs for services on a *per diem* basis. He explained that the settlement in lieu of alimony award had been far less than he expected. Accordingly, he waived his one-third portion of the settlement under the contingent-fee agreement. Methods of payment of the balance were discussed by Mrs. Claybon and respondent.

On January 21, 1974, Mrs. Claybon filed a complaint with the Attorney Registration and Disciplinary Commission alleging respondent's bill was "not in compliance with an initial agreement, nor commensurable with the work involved and was unfair and unjust." Yet, on January 27, 1974, Mrs. Claybon wrote respondent to advise him "that I am in the process of making arrangements to clear up the matter of the $2,578.75 balance you indicated I owed you."

On February 6, 1974, respondent wrote Mrs. Claybon that, since she had seen fit to repudiate their agreement, he was adding $1,000, or one-third of the settlement in lieu of alimony, to his bill for services, raising the total to $3,578.75. The charges contained in Claybon's complaint were referred to the Inquiry Board

of the attorney disciplinary system. On September 9, 1974, respondent appeared before a panel of the Inquiry Board, which explained that a contingent fee in divorce proceedings was not in accord with public policy. Respondent agreed to forgo any claim for the additional $1,000 contingent fee, but stated that he would pursue collection of the remainder. A subsequent letter to that effect was received by the Commission. On October 4, 1974, the Inquiry Board voted to dismiss the complaint.

Respondent subsequently filed suit on April 2, 1975, against Mrs. Claybon. In a two-count complaint, respondent sought $2,578.75 as the balance of his fees and $50,000 exemplary and actual damages on a charge of malicious prosecution. Defendant Claybon moved to dismiss the complaint. The trial court denied the motion with respect to count I, which is still pending. It granted the motion to dismiss with respect to count II, holding that the filing of a professional grievance against an attorney was privileged. Respondent appealed the dismissal of count II. The appellate court affirmed (*Alswang v. Claybon* (1976), 40 Ill. App. 3d 147), finding that respondent had failed to adequately allege "special injury" and malice by pleading conclusions rather than facts.

While respondent's appeal was still pending, the Administrator of the Attorney Registration and Disciplinary System commenced the instant proceeding against respondent. The complaint contained three counts. Count I alleged that respondent entered into a contingent-fee arrangement in a divorce proceeding. Count II charged respondent with seeking to charge Mrs. Claybon on an hourly as well as a contingent basis. Count III alleged that respondent's suit against Mrs. Claybon for malicious prosecution was filed solely for harassment purposes.

The hearing panel recommended by a divided vote

that respondent be suspended from the practice of law for one year, not upon the charges of either count I or II, but for prosecuting a suit for malicious prosecution against a client.

The Review Board recommended that respondent be censured, not suspended, for his conduct in filing a malicious prosecution suit against a client who had lodged a complaint against him with the Attorney Registration and Disciplinary Commission.

We believe respondent did not exercise good judgment in filing a suit for malicious prosecution against a former client. This, however, is not the issue before us. Nor are we concerned with whether, as a matter of law, a complaint filed with the Attorney Registration and Disciplinary Commission is privileged so that a malicious prosecution action cannot be based on it. That is at issue only in respondent's suit against Mrs. Claybon.

*Toft v. Ketchum* (1955), 18 N.J. 280, 113 A.2d 671, *adhered to on rehearing* (1955), 18 N.J. 611, 114 A.2d 863, *cert. denied* (1955), 350 U.S. 887, 100 L. Ed. 782, 76 S. Ct. 141, noted in *Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 149, considers competing and conflicting policies in determining whether complaints filed before disciplinary bodies are privileged. In favor is the public interest to be served by encouraging those with knowledge of the unethical conduct of attorneys to bring such facts to the proper agency absent the threat of prosecution of a malicious prosecution action. An argument to the contrary against the treatment of complaints with disciplinary boards as "privileged sanctuaries" is that such will provide a vehicle for personal vendettas against the attorney through the filing of groundless charges. For analytical studies of *Toft* see 34 Chi.-Kent L. Rev. 324 (1956); 8 Ala. L. Rev. 340 (1955); 31 N.Y.U. L. Rev. 232 (1956); 24 Fordham L. Rev. 479 (1955); 10 Rutgers L. Rev. 456 (1955).

Our duty is described in *In re Donaghy* (1948), 402 Ill. 120, 123:

"The legal calling is a time-honored profession and the courts owe a duty to protect the public from impositions and improper practices. This duty has repeatedly been declared by this court. (*People ex rel. Chicago Bar Ass'n v. Lotterman,* 353 Ill. 399; *People ex rel. Chicago Bar Ass'n v. Green,* 353 Ill. 638; *People ex rel. Chicago Bar Ass'n v. Hansen,* 316 Ill. 502.) Such duty, and the manner in which it is exercised, must not be despotic, but the charges must be sustained by clear and convincing proof ***. The courts must not exercise their supervisory control in an arbitrary manner, but must show a legal discretion in the exercise thereof. *In re Lasecki,* 358 Ill. 69."

Under the circumstances of this case, respondent should not be disciplined for filing an action open to the general public. Respondent has violated no canon of ethics. He has not interfered with the judicial process nor brought the legal profession into disrepute.

Accordingly, the complaint is discharged.

*Complaint discharged.*