**In re George C. HOWARD, Jr., Debtors.**

**Carl Pearson, Plaintiff,**

**v.**

**George C. Howard, Jr., Defendant.**

**Adversary No. 03 A 02330.**
**Bankruptcy No. 03 B 16153.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 22, 2006.

Richard L. Hirsh, Richard L. Hirsh & Associates, Hinsdale, IL, for Movant or Plaintiff.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Bankruptcy Judge.

This matter comes before the court on an adversary complaint filed by plaintiff, Carl Pearson ("Pearson") against debtor and defendant, George C. Howard, Jr. ("Howard"). The complaint states causes of action for a judgment pursuant to §§ 523(a)(2)(A), (a)(4) and (a)(6) of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*)[1] finding that a judgment entered in the Circuit Court of Cook County on June 23, 1995 in *Pearson v. Howard,* 91 L16399 in the amount of $244,332 ("Judgment") is non-dischargeable in this bankruptcy case. The Judgment was revived (not allowed to expire) by order of the same court on June 20, 2002.

The first amended complaint sets forth five causes of action. Count I alleges that Pearson engaged Howard to represent

---

1. All references made to the Bankruptcy Code are made to the Bankruptcy Code prior to the amendments incorporated by the Bankruptcy Abuse Protection and Consumer Protection Act of 2005, because such amendments are not applicable to this case.

him, that Pearson paid Howard a retainer and that Howard neither pursued an appeal on Pearson's behalf nor informed Pearson that he had determined that an appeal was not viable. Pearson alleges further that Howard's failure to keep him informed caused him to be wrongfully incarcerated for two years in a state prison. Pearson alleges that these facts resulted in the Judgment and that the Judgment was the result of a defalcation of Howard's fiduciary duty to Pearson and should therefore be determined to be non-dischargeable pursuant to § 523(a)(4) of the Bankruptcy Code.

Count II and Count IV allege that, based upon the same facts, Howard's conduct was willful and malicious and the Judgment should be non-dischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. Count III alleges that Howard's representation that he was handling Pearson's appeal when he was not constituted a false representation. Count V alleges that, based upon the earlier facts, and the additional allegations that Howard was disciplined by the Seventh Circuit Court of Appeals for similar negligence in other cases, that Howard's actions amounted to a fraud. Counts III and V allege that the Judgment should be determined to be non-dischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

Howard answered the first amended complaint and after some discovery and motion practice, the case was set for trial. The parties were each given the opportunity to present witnesses and exhibits and to provide post-trial memoranda and proposed findings of fact and conclusions of law to the court.

## Findings of Fact

Howard was a licensed attorney at all times relevant to this matter. In 1987, Pearson retained Howard to represent him after he was convicted of aggravated arson and battery. (Plaintiff's Exhibit # 2).[2] Because Pearson was incarcerated, Geraldine Pearson, Pearson's wife, spoke with Howard and on May 21, 1987, paid him $1500 of his requested $9000 retainer. (P.Ex. 4). The balance was paid to Howard over a period of time. (P.Ex. 4).

Howard filed a notice of appeal, dated June 22, 1987 (D.Ex.3) and obtained an appeal bond so that Pearson could be out of prison pending his appeal. Howard then did not prosecute the appeal. According to Howard's testimony, he reviewed the trial transcripts, concluded that there was no grounds for an appeal and advised Pearson of that fact. The record contains copies of three letters (P.Ex. 13, 14 and 15) that Howard testified he wrote to Pearson. Pearson and his wife deny that they ever received the letters. According to Pearson's testimony, he was out of jail on bond pending appeal, heard nothing from Howard and was arrested when his appeal bond was revoked because his appeal was dismissed for want of prosecution. He was then incarcerated from March 1989 until December 1991. He also testified that he wrote to Howard from prison and that his letters went unanswered. This court finds that Howard's letters were never sent and therefore never received by Pearson or his wife.

The first letter, dated April 20, 1988, informs Pearson that Howard has come to the conclusion that an appeal of Pearson's case would be without merit (P.Ex. 13). Despite his conclusion about the merits of the case, Howard went into court to have

---

**2.** Exhibits will be hereinafter identified as "P.Ex. # " for plaintiff's exhibits and "D.Ex. # " for defendant's exhibits.

Pearson's bond reinstated but did not withdraw from the case nor advise Pearson that he should get other counsel (P.Ex. 7 at pp. 38–40). Howard's letter does not line up with his effort to reinstate the bond. It also defies logic that he would write this letter and then fail to file a motion to withdraw from Pearson's case.

The second letter, dated July 20, 1988, requests that Pearson contact Howard because he had "heard nothing from you for quite a long time." (P.Ex. 14). He did not, in the letter, inform Pearson that if he failed to act that his appeal would be dismissed. When questioned in a deposition about his failure to do so, Howard responded by saying that he had "discussed it with him on the phone any number of times before that; he knew that, and beside he was not a novice to it, he had been in the system ..." (P.Ex. 7 at p. 40). This response strikes a hollow chord. A lawyer as experienced as Howard would have put his advice in writing, especially here, where he was already allegedly drafting a letter.

The third letter, dated September 11, 1988 (P.Ex. 15), advises Pearson that Howard previously sent him a form related to a petition for executive clemency, that he had not received the form back from Pearson and that Pearson should contact him. This letter, again, fails to inform Pearson that his bond would be forfeited when his appeal was not perfected and that he would be arrested.

Howard called his secretary as a witness and she testified about the letters. She stated that she remembered the letters. This testimony was not credible, for several reasons. First, it seems unlikely that Ms. Molsby would specifically remember letters mailed out 17 years earlier. Second, she testified that it was her practice to type her initials on letters she typed for Howard. Her initials were not on the

letters. She explained this by saying that she sometimes delegated typing to temporary office help. If she delegated the task, it is not credible that she would remember the letters. Third, she testified that Howard had hundreds, maybe thousands of clients in the years she worked for him, diminishing the likelihood that she would have actual recall of correspondence sent to one client whom she never met. Finally, there is the more credible testimony of Mrs. Pearson, which contradicts Ms. Molsby.

Mrs. Pearson testified that she received a letter from the Illinois Attorney Registration and Disciplinary Commission ("ARDC") around November 9, 1990. The letter contained copies of the plaintiff's exhibits 13, 14 and 15. She stated that she never saw those letters before November 1990. Her testimony is supported by an affidavit she executed on November 29, 1990, where she stated that the letters were not received by her or anyone else at the address to which they were directed (P.Ex.11). The affidavit was signed two years after the letters were allegedly sent and Mrs. Pearson's two year old recollection regarding her husband's incarceration is more credible than Ms. Molsby's seventeen year old recollection about one of hundreds of clients.

Finally, there is the matter of the unopened letters. A complaint was filed against Howard on March 29, 2004 with the ARDC in which Howard was charged with fifteen counts of misconduct (P.Ex. 7–3 at page 1). Count One alleged that Howard had neglected Pearson's criminal appeals. The other counts concerned other clients of Howard's. The Hearing Board ultimately found that Howard "provided ample legal services on Mr. Pearson's behalf." During the investigation, however, the ARDC Administrator discovered several letters sent to Howard by

Pearson in Howard's file; the letters were *unopened* (P.Ex 7–3 at page 6). This fact lends credence to Pearson's testimony that Howard never contacted him and that his efforts to contact Howard were not responded to by Howard.

Pearson's conviction was later vacated because the arson statute under which he was convicted had been found to be unconstitutional prior to his conviction and the conviction was found to be *void ab initio*. An attorney for the Public Defender's Office made the discovery and Pearson was released from custody. (P.Ex. 6).

On October 9, 1991, Pearson commenced a malpractice lawsuit against Howard in the Circuit Court of Cook County which resulted in the Judgment (P.Ex. 5). An appeal to the Appellate Court of Illinois, First Judicial District resulted in an affirmance, but with a reduction of the Judgment by $24,444. (P.Ex. 6). In its order, the appellate court found that "[Howard] does not dispute that he orally agreed to prosecute [Pearson's] appeal in exchange for a fee, and that he failed to do so." (P.Ex. 6).

### Conclusions of Law

■ Section 523 of the Bankruptcy Code provides for various exceptions to the dischargeability of debts. The party seeking to establish an exception to the discharge of a debt bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995); *Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 655 (Bankr.N.D.Ill.1998). To advance the policy of giving the debtor a fresh start in bankruptcy, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994).

*False Pretenses, A False Representation or Fraud*

■ Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt is not dischargeable if money, property, services or an extension of credit were obtained by false pretenses, a false representation or fraud. A cause of action under this subsection with an allegation that the debtor made a false representation, requires the following elements to be proven: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; and (3) the creditor relied on the representation. *Califf v. Park (In re Park)*, 2002 WL 130948 (Bankr.N.D.Ill.); *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308 (Bankr.N.D.Ill.2001). The creditor's reliance must have been justifiable, *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) and "false pretenses" or "representations" are representations knowingly and fraudulently made that give rise to the debt. *Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir.1986), *abrogated in part on other grounds, Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ To the extent Pearson alleges an actual fraud, the requirements for the cause of action are different. Under Seventh Circuit precedent, an actual fraud does not require pleading a misrepresentation or reliance. *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir.2000). Rather, a plaintiff may show any "deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* at 893, *quoting* 4 Collier on Bankruptcy ¶ 523.08[1][e], p. 523–45 (15th ed., Lawrence P. King ed., 2000). Following *McClellan*, Judge Squires opined that a creditor must establish that "(1) a fraud occurred; (2) the debtor was guilty of intent to defraud; and

(3) the fraud created the debt that is the subject of the discharge dispute." *Califf,* 2002 WL 130948 at *6.

■ Any cause of action under § 523(a)(2)(A) requires proving that the debtor acted with intent to deceive. *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421 (7th Cir.1985), *overruled on other grounds.* Questions of intent are questions of fact to be determined by the bankruptcy court. *Gabellini v. Rega,* 724 F.2d 579 (7th Cir.1984). Pearson demonstrated that Howard misled him by failing to communicate with him about his case. Pearson also demonstrated that he relied on Howard to his detriment. He failed to prove however, by a preponderance of the evidence, that Howard's intent was to deceive.

Howard's testimony, and the documentary evidence from the ARDC and the state courts, proclaimed, loud and clear, that Howard made the error that many successful lawyers make in an effort to accommodate too many people needing his services. He took on too many clients and in the process, failed to fulfill his responsibilities to everyone to whom he had made promises. This does not mitigate his negligence but neither does it show intent to defraud. This court finds that Howard did not intend to harm Pearson and that Howard's actions did not rise to the level of a fraud. His actions did however rise to the level of a defalcation.

*Defalcation While Acting In A Fiduciary Capacity*

Section 523(a)(4) of the Bankruptcy Code provides in pertinent part that a debtor is not discharged from a debt which results from "fraud or defalcation while acting in a fiduciary capacity . . ."

■ The first requirement for the application of § 523(a)(4) is that a fiduciary relationship exists. *Law Firm of Wendy*

*R. Morgan v. LeRoy (In re LeRoy),* 251 B.R. 490, 499 (Bankr.N.D.Ill.2000). Whether Howard was acting in a fiduciary capacity for purposes of the statutory provision is a question of federal law. *See Salem Servs., Inc. v. Hussain (In re Hussain),* 308 B.R. 861, 867 (Bankr.N.D.Ill. 2004); *People v. Volpert (In re Volpert),* 175 B.R. 247, 260 (Bankr.N.D.Ill.1994). However, state law is relevant to the inquiry. *In re McDade,* 282 B.R. 650, 659 (Bankr.N.D.Ill.2002); *Blackhawk B.M.X., Inc. v. Anderson (In re Anderson),* 64 B.R. 331, 334 (Bankr.N.D.Ill.1986).

■ Under Illinois law, the association created between an attorney and his client is a fiduciary relationship. *Janikowski,* 60 B.R. at 788 (*citing In re Kolb,* 362 Ill. 190, 199 N.E. 92, 93 (1934); *People ex rel. Chi. Bar Ass'n v. Green,* 353 Ill. 638, 187 N.E. 811, 813 (1933)).

■ Further, the Seventh Circuit has explicitly held that a lawyer is his client's fiduciary. *In re Marchiando,* 13 F.3d 1111, 1115 (7th Cir.1994). Some circuits hold that the attorney-client relationship, by itself, does not establish a fiduciary relationship without the existence of an express trust for purposes of § 523(a)(4). *See, e.g., Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir.1996). In the Seventh Circuit however the law is plain.

> The high standard of loyalty and care that the law imposes on trustees is encapsulated in the term "fiduciary duty." Once it entered the law's bank of concepts, it became available for use in situations that, while not involving trusts in a formal sense, seemed to call for the imposition of the same high standard. *Restatement (Second) of Trusts 2, comment b* (1959). So a lawyer is deemed the fiduciary of his client, even if he does not manage a fund entrusted to him by

the client, *Maksym v. Loesch*, 937 F.2d 1237, 1241–42 (7th Cir.1991) ...

In *Marchiando*, the court also discussed the rationale behind treating a lawyer as a fiduciary of his client.

The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act upon it. These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

13 F.3d at 1115–16.

It is not disputed that Pearson retained Howard to represent him as his attorney. Accordingly, Howard was a fiduciary of Pearson.

▉ The second requirement for the application of § 523(a)(4) is that a fraud or defalcation occurred. For the reasons discussed above, this court determines that Howard's actions did not rise to the level of fraud. Defalcation however is another matter. "Defalcation" is not defined in the Bankruptcy Code. Black's Law Dictionary defines "defalcation" as, *inter alia*, "failure to meet an obligation; a non-fraudulent default ..." Black's Law Dictionary, Eighth Edition, p. 448 (2004). The Seventh Circuit has grappled at length with this question and arrived at the conclusion that a negligent breach of a fiduciary duty is not a defalcation, but that a "knowing breach of fiduciary duty is more culpable than a mere negligent breach of duty" and does rise to the level of a defalcation. The

court also suggested that "willfulness" or "recklessness" are elements of defalcation. It is however less than fraud. *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir.1994).

▉ In *Meyer v. Rigdon*, Robert Rigdon was the president of an Indiana bank. He was also a member of the board of directors and owned a controlling interest. In August of 1984, the Federal Deposit and Insurance Corporation determined that the bank was insolvent, closed it and was appointed its receiver. The FDIC then brought suit against Rigdon and other members of the board for breaching their fiduciary duty to the bank in managing the bank's making and collecting of loans. The district court entered a judgment against Rigdon. The judgment was later assigned to his co-defendants. In February of 1992, Rigdon filed a bankruptcy petition under chapter seven of the Bankruptcy Code and the co-defendants filed a complaint in the bankruptcy court seeking a determination as to whether Rigdon could discharge his debt arising from the FDIC lawsuit. They argued that the debt was non-dischargeable pursuant to § 523(a)(11) of the Bankruptcy Code, which provides that a debt is non-dischargeable when it arises from "any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union."

After disposing of several other issues, the court decided the issue of whether the judgment arose from "any act of fraud or defalcation while acting in a fiduciary capacity," *id.* at 1382, which is the same issue that a court would have to resolve in order to make a determination under § 523(a)(4). In deciding whether a defalcation had been committed, the court looked to other Circuits which had resolved the question of defining "defalcation." "The Fifth Circuit

defined the term 'defalcation' within the meaning of section 523(a)(4) as 'a willful neglect of duty, even if not accompanied by a fraud or embezzlement.' [Citations omitted]" *Id.* at 1383. The Seventh Circuit agreed with the Fifth and Sixth Circuits that a negligent breach does not rise to the level of a defalcation, but found that Rigdon had breached his duty and committed a defalcation by improperly approving and disbursing loans without performing necessary functions that are expected of someone in his position.

Similarly, Howard breached his duty to his client. He failed to examine the statute under which Pearson was convicted sufficiently to discover that it had been declared unconstitutional by the Supreme Court of the State of Illinois. Howard correctly points out that this discovery was also not made by the prosecuting attorneys, any of Pearson's defense attorneys or the judge that tried Pearson's case. It is quite astounding to see that this is true. Nevertheless, this fact does not obviate Howard's duty to his client.[3] More importantly, Howard failed to communicate with his client. He failed to tell him that he thought that he had no grounds for an appeal, he failed to tell him that his appeal bond was about to be revoked, he failed to offer him the opportunity to find other counsel. He failed to *open* the correspondence he received from his client. He knew he was overextended and failed to remedy the situation.

Howard has had difficulty keeping up with his own caseload for some time. "His

disciplinary problems in this state began on December 12, 1984, when the United States Court of Appeals for the Seventh Circuit found that he had neglected three criminal appeals and ordered his name stricken from its roll of practicing attorneys. [Howard] was reinstated by the Seventh Circuit about five years later and permitted to resume practice effective January 1, 1990. In the meantime, in 1988, the Review Board issued a reprimand against [Howard] based on his Seventh Circuit suspension and, in addition, his neglect of another criminal case." *In re Howard,* 188 Ill.2d 423, 426, 242 Ill.Dec. 595, 721 N.E.2d 1126, 1128 (1999).

Furthermore, in the ARDC matter referred to by Mrs. Pearson, the Hearing Board found that "[t]he evidence demonstrates that during the course of his career, [Howard] repeatedly took on more clients and cases than he could handle ... [Howard's] office management practices are non-existent at their worst and extremely sloppy at best. The combination of an overly busy legal practice and ineffective office management led to the neglect of several legal matters." (P.Ex. 7).

There is no question that Howard is a lawyer of considerable ability who achieved the respect and admiration of his peers through sacrifice and hard work. This cannot however excuse his failure in this matter. When a lawyer has too much work for one person he must either refuse additional work or hire additional staff to meet the burden and supervise that staff.[4] Howard did neither.

---

**3.** As Justice Cardozo is often quoted, "[m]any forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties ... Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate ... Only thus has the level of conduct for fiducia-

ries been kept at a level higher than that trodden by the crowd." *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928).

**4.** " 'When more business becomes concentrated in one firm than it can handle, it has two obvious remedies: to put on more legal help, or let some of the business go to offices which have time to attend to it. I doubt if any court

For these reasons, this court finds that Howard willfully neglected his duties to his Pearson.

*Willful and Malicious Injury*

Section § 523(a)(6) of the Bankruptcy Code provides that a "discharge under section 727 ... does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity ..."

 This section "is intended to prevent the discharge of debts incurred as a result of intentional torts." *Radivojevic v. Pickens (In re Pickens)*, 234 F.3d 1273 (7th Cir.2000). "Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998)(quoting the Restatement (Second) of Torts sec. 8A (1964)). For the same reasons that this court finds that Howard's actions did not rise to the level of a fraud, it further finds that Howard did not willfully or maliciously injure Pearson. Howard did not act with the intent to cause Pearson to spend time unnecessarily in prison. Rather, he neglected a client to whom he owed his attention.

### Conclusion

For the foregoing reasons, the Judgment is non-dischargeable pursuant to § 523(a)(4) of the Bankruptcy Code. By separate order, Pearson will be granted relief on Count I of his first amended complaint. Counts II, III, IV and V of the first amended complaint will be dismissed.

---

should be a party to encouraging the accumulation of more business in one law office than it can attend to in due time.' " *Gray v. Gray,* 6 Ill.App.2d 571, 578, 128 N.E.2d 602, 605 (1st Dist.1955)(Judge Ulysses S. Schwartz quoting Mr. Justice Jackson in *Knickerbocker Printing Corp. v. U.S.,* 75 S.Ct. 212, 1954, 99 L.Ed. 1292).