In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2252

IN RE: JOHN C. JAHRLING,

*Debtor.*

ESTATE OF STANLEY CORA,

*Plaintiff-Appellee,*

*v.*

JOHN C. JAHRLING ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 8056 — **James B. Zagel**, *Judge.*

ARGUED DECEMBER 11, 2015 — DECIDED MARCH 18, 2016

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. A bankruptcy court held that a legal malpractice judgment against debtor-appellant John Jahrling was not dischargeable because the judgment was for a "defalcation while acting in a fiduciary capacity." See 11 U.S.C. § 523(a)(4). The district court affirmed, and so do we.

Appellant Jahrling acted as an attorney for a client who was selling his home. Because of language barriers, Jahrling could not communicate with his client except through the attorney for the buyers, the adverse parties in the sale. The result was that Jahrling's client, an elderly man who could not speak English, sold his home for a pittance and then faced eviction from what he thought would be his home for the rest of his life. We agree with the bankruptcy court and the district court that Jahrling's egregious breaches of his fiduciary duty to his client were reckless and that the resulting legal malpractice judgment is not dischargeable in bankruptcy.

I.  *Factual and Procedural Background*

John Jahrling is an attorney in Illinois. Walter Rywak, another attorney, contacted Jahrling and asked him to prepare closing documents for a real estate transaction. Rywak paid Jahrling $400 for doing the closing work. The transaction was the sale of Stanley Cora's home. Cora was 90 years old. He was approached by Rywak's clients and offered $35,000 for the property. That price was far below the fair market value of a fee simple title; the property was worth at least $106,000 and was later resold by the purchasers for $145,000. Cora later alleged he understood that one term of the deal was that he would keep a life estate that would have allowed him to live in the upstairs apartment of the home rent-free for the rest of his life. The problem was that the sale documents prepared by Jahrling did not include a life estate for Cora.

The closing documents identified Jahrling as Cora's attorney. Jahrling and Cora could not communicate directly and privately because Cora spoke only Polish and Jahrling

spoke no Polish. So instead of direct attorney-client communication about what the client wanted from the sale, the attorney relied on counsel for the adverse parties for all communication with his client. After the buyers tried to evict Cora because he did not have the life estate he expected, Cora sued Jahrling in state court for legal malpractice. Cora passed away in 2006 before the trial, but his estate pursued the case.

After a bench trial, the state court judge (Hon. Mary Anne Mason, now a Justice of the Illinois Appellate Court) ruled that Jahrling had been Cora's attorney and thus owed Cora a duty to know what he wanted from the sale. See *In re Jahrling*, 514 B.R. 565, 569 (Bankr. N.D. Ill. 2014) (summarizing state court's findings). The state court found that Jahrling's inability to communicate with his client, coupled with relying on opposing counsel for all his information about the transaction, was "unreasonable, per se." *Id*. The court also found that Jahrling never talked with his client before the closing. Finally, the court pointed out the huge discrepancy between the value of the home and the sale price. After a partial settlement with a third party and offsets, the state court ultimately awarded Cora's estate $26,000, plus costs. *Id*. at 569–70.

Jahrling filed for bankruptcy protection under Chapter 7. Cora's estate filed an adversary proceeding alleging that the state court judgment was not dischargeable in bankruptcy on several grounds, including under 11 U.S.C. § 523(a)(4) because the debt was the result of defalcation by the debtor acting as a fiduciary. The bankruptcy court found in favor of the estate on the § 523(a)(4) claim. *In re Jahrling*, 514 B.R. at 578. The court found that Jahrling had been Cora's attorney

and that his argument to the contrary was barred by collateral estoppel (issue preclusion). *Id*. at 570–71. The court then found that Jahrling violated at least three rules of professional responsibility—competence, diligence, and communication. *Id*. at 571–72. The court said that Jahrling's handling of the sale without speaking with Cora was a "gross deviation from the standard of conduct that a law-abiding person as well as any Illinois attorney would observe in Jahrling's situation." *Id*. at 573. The court concluded that Jahrling "consciously disregarded a substantial and unjustifiable risk that his conduct would violate a fiduciary duty." *Id*. The bankruptcy court concluded that his substandard representation of Cora amounted to the level of recklessness required by *Bullock v. BankChampaign, N.A.*, 569 U.S. —, 133 S. Ct. 1754 (2013). *In re Jahrling*, 514 B.R. at 573. Cora's estate satisfied its burden of proving by a preponderance of the evidence under § 523(a)(4) that Jahrling committed defalcation as a fiduciary. *Id*. at 574.

The district court affirmed in a concise and persuasive memorandum, noting: "When an interpreter is an attorney for the other party, interests are not aligned." *Jahrling v. Estate of Cora*, 530 B.R. 679, 681 (N.D. Ill. 2015). Jahrling has appealed. We have jurisdiction under 28 U.S.C. § 158(d) because this is an appeal from a final judgment in an adversary action on the dischargeability of a debt. *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998). We review the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *Id*.

II. *Defalcation in a Fiduciary Capacity*

   A. *Governing Standard under Bullock*

Federal bankruptcy law is aimed at providing fair and orderly relief for the "honest but unfortunate debtor," who can obtain a "fresh start" by distributing available assets to creditors and discharging debts left unpaid. See *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). Excluded from discharge, however, are a number of categories of debts for which Congress has found that the interests of creditors outweigh the debtor's interest in a fresh start. See 11 U.S.C. § 523.

This case addresses the exception from discharge in 11 U.S.C. § 523(a)(4) if the debt is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To satisfy § 523(a)(4), a creditor must prove that (1) "the debtor acted as a fiduciary to the creditor at the time the debt was created," and (2) "the debt was caused by fraud or defalcation." *In re Berman*, 629 F.3d at 765–66, citing *In re Frain*, 230 F.3d 1014, 1019 (7th Cir. 2000); *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

The claim here is not for actual fraud but for "defalcation," a word that only lawyers and judges could love. As Justice Breyer explained for the Supreme Court, Congress first used the term in a federal bankruptcy statute in 1867, and "legal authorities have disagreed about its meaning almost ever since." *Bullock*, 133 S. Ct. at 1758. Before the Supreme Court provided its authoritative guidance in *Bullock*, we had explained that defalcation "can be distinguished from fraud and embezzlement on the basis that subjective, deliberate wrongdoing is not required to establish defalcation," though some degree of fault greater than negligence

or mistake, but less than fraud, was required. *In re Berman*, 629 F.3d at 765 n.3, citing *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937) (L. Hand, J.), and *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

The Supreme Court clarified the law in *Bullock*, holding that defalcation requires proof of "a culpable state of mind … involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 133 S. Ct. at 1757. The objecting creditor bears the burden of proving by a preponderance of the evidence that an exception to discharge applies. See *Grogan*, 498 U.S. at 286–87; see also *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995) (requiring creditor to meet preponderance of the evidence standard under § 523(a)(2)(B)).

In *Bullock* the Court explained that the state-of-mind requirement requires at least a subjective, *criminal* level of recklessness:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his

> conduct will turn out to violate a fiduciary du-
> ty.

133 S. Ct. at 1759 (citation omitted). The Court said further that the risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*. at 1760. (emphasis in original), quoting ALI, Model Penal Code § 2.02(2)(c), at 226 (1985). The Court added that defalcation, unlike fraud, "may be used to refer to *nonfraudulent* breaches of fiduciary duty." *Id*. (emphasis in original).

B. *Applying the Subjective Standard*

Jahrling argues that the bankruptcy court committed a legal error by applying an objective test to decide defalcation. He also argues that the bankruptcy court erred by relying on the Illinois Rules of Professional Conduct for attorneys to determine the standard of care against which his conduct was judged. We reject both arguments. The bankruptcy court properly applied *Bullock* and made findings about Jahrling's state of mind to find that he committed a defalcation while acting in a fiduciary capacity. The court did not err by taking into account his serious violations of fundamental rules of professional conduct in finding that his conduct was subjectively reckless.[1]

----

[1] Jahrling also argues that the willfulness standard that a bankruptcy court articulated in *In re Howard (Pearson v. Howard)*, 339 B.R. 913 (Bankr. N.D. Ill. 2006), could apply to this case. *Howard* is not precedential. It was also decided before the Supreme Court provided a definitive standard in *Bullock*. In any event, the *Howard* court correctly read our precedents,

Judges and juries rarely have access to direct evidence about a person's state of mind at a prior time. Even the rare direct evidence, such as a contemporaneous expression by that person, is not necessarily reliable. Like almost any findings about a person's state of mind, then, the bankruptcy court had to base its findings on circumstantial evidence. The court drew inferences about Jahrling's state of mind based on the objective circumstances, but the court applied the correct subjective standard.

The facts almost speak for themselves. Jahrling was Cora's attorney, yet he could not and did not communicate with him except through counsel for the adverse party in the transaction. The result, according to the detailed findings of both the state court and the bankruptcy court, was that Jahrling did not include in the closing documents for the bargain-basement sale of the home the one term most important to Cora: retaining a life estate in one residence so that he could live there rent-free. And so, a few months later, the 90-year-old Cora faced eviction by the buyers, whose own lawyer had been the sole channel for communication between attorney Jahrling and client Cora.

Jahrling's conduct amounted to at least negligence, but as *Bullock* shows, negligence is not sufficient to show defalcation within the meaning of § 523(a)(4). The bankruptcy court's finding of subjective recklessness was a reasonable finding from the circumstantial evidence. In essence, the court found, Jahrling's breaches of an attorney's fiduciary

---

and anticipated *Bullock*, in saying that defalcation required more than negligence but that either willfulness or recklessness could suffice. *Id*. at 920.

duty to his client were so basic and the risk of harm to the client so obvious that Jahrling must have recognized them and proceeded despite the risk. We find no error in this analysis.

A useful illustration of this reasoning comes from a quite different area of federal law that also applies a subjective recklessness standard. The Supreme Court has interpreted the Eighth Amendment to the Constitution to forbid prison officials from being deliberately indifferent to serious threats to the health and safety of inmates. The deliberate indifference standard requires proof that the prison official was *subjectively* aware of the risk: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That is a similar standard from criminal law, of recklessness involving actual, subjective knowledge of the risk, that the Supreme Court found to govern defalcation cases under 11 U.S.C. § 523(a)(4) in *Bullock*, 133 S. Ct. at 1759–60.

But the Supreme Court in *Farmer* added a helpful explanation for how such subjective recklessness may be shown:

> We doubt that a subjective approach will present prison officials with any serious motivation "to take refuge in the zone between 'ignorance of obvious risks' and 'actual knowledge of risks.'" Brief for Petitioner 27. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. Hall[, General Principles of Criminal Law] 118 [2d

ed. 1960] (cautioning against "confusing a mental state with the proof of its existence"), and *a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious*.

511 U.S. at 842 (emphasis added).

That was in essence the reasoning of the bankruptcy court in this case: the risks to client Cora were so obvious that Jahrling must have recognized them yet forged ahead recklessly, acting in a way that amounted to a "gross deviation" from the standards expected of an attorney in a fiduciary role. That state-of-mind finding satisfies the *Bullock* standard under § 523(a)(4). See also *In re Sheridan*, 57 F.3d at 634 (circumstantial evidence may be used to determine intent to deceive under § 523(a)(2)(B)). The bankruptcy court did not erroneously apply a purely objective standard.

The bankruptcy court framed much of its analysis in terms of Jahrling's violations of several basic rules of professional conduct for attorneys: the rules requiring competence and diligence on behalf of clients, and communication with clients. *In re Jahrling*, 514 B.R. at 571–72, quoting Illinois Rules of Professional Conduct 1.1, 1.3, & 1.4 (2002) (the version in effect at the time of Jahrling's actions). The court found that Jahrling's conduct was "a gross deviation from the standard of conduct that a law-abiding person as well as any Illinois attorney would observe in Jahrling's situation." *Id*. at 573.

Jahrling argues that the bankruptcy court erred by confusing a violation of rules of professional conduct with the more demanding standard for "defalcation" under

§ 523(a)(4). As we have explained, the court did not confuse the objective criteria of the rules of professional conduct requiring competence, diligence, and communication with the subjective recklessness standard under *Bullock*. We also find no error in the bankruptcy court's use of the rules of professional conduct to determine the baseline standard of care that Jahrling owed his client.

To be clear, a finding that an attorney has violated a rule of professional conduct is not sufficient, by itself, to show defalcation by a fiduciary under § 523(a)(4). In applying the statutory standard, however, the rules of professional conduct can be relevant, as they were here. Jahrling points out that the preamble to the rules states: "Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." Ill. Rules of Prof'l Conduct, Preamble at [20] (2002). But the preamble also explains that "since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." *Id*. That is precisely how the bankruptcy court in this case used these basic and obvious rules aimed at protecting the interests of clients. We have noted before that Illinois courts treat "the rules of professional responsibility, insofar as they are designed for the protection of lawyers' clients (not all of the rules are)," as furnishing "potentially useful guidance to courts … ." *Maksym v. Loesch*, 937 F.2d 1237, 1243–44 (7th Cir. 1991).

Finally, Jahrling argues that Cora's estate did not present sufficient evidence of Jahrling's failures. Cora's estate was not required to relitigate the factual and legal issues under-

lying the state court judgment for malpractice. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) (collateral estoppel principles apply in discharge exception proceedings under § 523(a)); *In re Bulic*, 997 F.2d 299, 304 (7th Cir. 1993) (bankruptcy courts give state court judgments full faith and credit under 28 U.S.C. § 1738). The estate was required to prove only the higher standard of subjective recklessness, which it did through circumstantial evidence as discussed above.

The judgment of the district court is AFFIRMED.